UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EHSAMUDIN ALIZADA,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Acting Attorney General of the United States, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02093-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Ehsamudin Alizada's Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 10. Respondents[1] are Todd Blanche, Acting Attorney General of the United States; Markwayne Mullin, Secretary for the U.S. Department of Homeland Security ("DHS"); Julio Hernandez, Acting Seattle Field Office Director; U.S. Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); and Bruce Scott, Warden of the Immigration Detention Facility.

---

[1] As used elsewhere in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

Petitioner, who has been detained at the Northwest Immigration and Custom Enforcement Processing Center ("NWIPC") for over six months since his order of removal became final (*id.* at 3), seeks: (1) his release from custody; (2) an order that prevents his re-detention without a hearing before a neutral decision maker, where the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances; (3) an order that Respondents may not re-detain Petitioner unless Respondents comply with Petitioner's proposed conditions; (4) an order that prevents Petitioner's removal to a third country without notice and a meaningful opportunity to respond; (5) an order that prevents Petitioner's removal to a third country where he is likely to face imprisonment or other punishment upon arrival; and (6) an order that Respondents may not subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks. *Id.* at 30–31. Having reviewed the petition, Respondents' return (Dkt. No. 14), Petitioner's reply (Dkt. No. 17), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the habeas petition.

## I.    BACKGROUND[2]

Petitioner is Ehsamudin Alizada, a native and citizen of Afghanistan. Dkt. No. 10 at 5; Dkt. No. 16-2 (Notice to Appear) at 2. Petitioner is approximately 25 years old. *See* Dkt. No. 16-1 (Record of Deportable/Inadmissible Alien) at 2. Petitioner is presently detained at the NWIPC in Tacoma, Washington. Dkt. No. 10 at 3.

---

[2] Many of the facts recounted herein come from the Petition itself. Others are drawn from hearsay contained within various DHS forms and the declaration of Deportation Officer Sooseon Jeon, who claims knowledge based on "personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by ICE." Dkt. No. 15 ¶ 2. The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be mostly uncontested, except for discrepancies that are expressly discussed within this Order.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

**A.      Petitioner's Immigration Background**

Petitioner is Hazara and Shia—ethnic and religious groups that have been persecuted by the Taliban in Afghanistan. *Id.* at 6. Petitioner is also an activist and journalist who has used social media to share articles, reports, and information on his own political activities, including promoting freedom of expression and human, civil, and women's rights. *See id.* Because of his online engagement, Petitioner was kidnapped and beaten by the Taliban. *Id.* Once he was released, he left Afghanistan out of fear that the Taliban would re-detain him. *Id.*

On January 1, 2025, Petitioner crossed the U.S.–Mexico border into Arizona, encountered Border Patrol agents, surrendered, and requested asylum. *Id.* at 8. Immigration officers determined Petitioner was inadmissible and issued him a Notice and Order of Expedited Removal. Dkt. No. 15 (Jeon Decl.) ¶ 5. On March 18, 2025, USCIS interviewed Petitioner regarding his fear of removal to Afghanistan. *Id.* ¶ 6. The officer determined that there was a sufficient basis for Petitioner to claim protection under the Convention Against Torture ("CAT"). Dkt. No. 10 at 8; Dkt. No. 15 ¶¶ 7–8; Dkt. No. 16-2 at 2.

**B.      Petitioner's Detention**

Petitioner has been and is presently detained at the NWIPC in Tacoma. Dkt. No. 18 (Alizada Decl.) ¶ 2. He may not be removed to Afghanistan and Respondents have not provided evidence of a travel document for any other country. Dkt. No. 10 at 8.

ICE instructed Petitioner to contact other countries to establish a relationship with them and to document his efforts. *Id.* On April 23, 2026, Petitioner contacted the Australian Consulate and left a voicemail. Dkt. No. 2-1 (I-229A Continuation Page) (Sealed) at 2. On May 4, 2026, Petitioner called the Canadian consulate and was told they could not help him. *Id.* That same day, Petitioner called the Australian consulate again and left a voicemail. *Id.* Petitioner also contacted the New Zealand consulate and was informed that the consulate could not give him a

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

visa or asylum. *Id.* The New Zealand consulate recommended he contact the United Nations High Commissioner for Refugees. *Id.* That same day, Petitioner also called the United Kingdom consulate but didn't receive an answer. *Id.* On May 19, 2026, he left another voicemail with the Australian consulate. *Id.* at 2. On May 22, 2026, Petitioner called the French consulate and left a voicemail. *Id.* On May 26, 2026, Petitioner contacted the Swedish consulate and was told they could not provide him with assistance. *Id.* Petitioner continues to contact the consulates of other countries, but no country has agreed to accept him. Dkt. No. 10 at 9.

**C.      Removal Proceedings**

On or about June 19, 2025, Petitioner was issued a Notice to Appear ("NTA") and placed into regular removal proceedings. Dkt. No. 16-2 at 3. Petitioner was charged as removable under Section 212(a)(6)(A)(i) of the Immigration Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). *See id.*, at 2.

On October 8, 2025, Petitioner filed a formal application for asylum, INA withholding, and CAT withholding. Dkt. No. 10 at 8. On November 20, 2025, an immigration judge ("IJ") denied Petitioner's application for asylum and ordered his removal to Afghanistan but granted him Withholding of Removal under INA § 241(b)(3). Dkt. No. 10-1 (Order of the Immigration Judge) at 2, 4. DHS waived the right to appeal. *Id.* at 4. Petitioner reserved appeal but did not file an appeal with the Board of Immigration Appeals ("BIA"). Dkt. No. 14 at 6. As of December 22, 2025, Petitioner is subject to a final order of removal. *Id.*

**D.      Warnings for Failure to Depart**

Petitioner and Respondents have differing accounts of what happened with respect to Petitioner not signing three Warnings for Failure to Depart. According to Respondents, Petitioner refused to sign three Warnings for Failure to Depart and "indicated that he had not found a third country he can be removed [to]." Dkt. No. 15 ¶ 10. According to Petitioner, on December 25,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

2025, a deportation officer handed Petitioner a paper called "Warning for Failure to Depart" and asked petitioner to sign it. Dkt. No. 18 ¶ 3. Petitioner told the officer he wanted a copy of the paper to review and to speak with his attorney before signing. *Id.* The officer told Petitioner that his signature did not matter and wrote "refusal." *Id.* Petitioner denies refusing to sign or refusing to assist with removal. *Id.* On February 12, 2026, an officer handed Petitioner another "Warning for Failure to Depart" and told him to sign the document. *Id.* ¶ 4. Again, Petitioner told the officer he wanted a copy to review and to talk to his attorney before signing. *Id.* The officer wrote "Refused to sign" on the document but Petitioner denies refusing to sign. *Id.* Petitioner asserts the exact same situation happened with the Warning for Failure to Depart presented to him on March 16, 2026, as well. *Id.* ¶ 5.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.    DISCUSSION

The Court begins with a caution from the Supreme Court: "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect . . . [W]here detention's goal is no longer practically attainable, detention no longer 'bear[s a] reasonable relation to the purpose for which the individual [was] committed.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241 on three grounds: (1) Petitioner's continued detention in immigration custody violates the Due Process Clause of

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

the Fifth Amendment (Dkt. No. 10 at 25); (2) Respondents' third-country removal policy violates the Fifth Amendment, the INA, the CAT, the Administrative Procedure Act ("APA"), and regulatory requirements (*id.* at 27); and (3) Respondents' third-country removal policy violates the Fifth and Eighth Amendments (*id.* at 28). He also seeks injunctive relief, invoking the Court's jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as Respondent), and 28 U.S.C. § 1651 (All Writs Act). *Id.* at 4, 26. The Court will address these claims for relief in turn.

**A.    Continued Detention**

**1.    Legal Framework for Detention Under the INA**

As a noncitizen with a final order of removal, Petitioner is detained under 8 U.S.C. § 1231. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period, *id.* § 1231(a)(2)(A). Section 1231(a)(6) authorizes the continued detention of certain noncitizens after the expiration of the removal period. Although there is no explicit temporal limit on the length of detention in the statute, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *Zadvydas*, 533 U.S. at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Court recognized six months as that time limitation. *Id.* at 701. It found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment guarantee of due process applies to removal proceedings. *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). In addition, "the Due Process Clause protects [a noncitizen] subject to a final order of deportation . . . ." *Zadvydas*, 533 U.S. at 693–94 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to removal proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Zadvydas*, 533 U.S at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*.

**2.      Petitioner's Circumstances**

**a.      The Length of Detention Exceeds What Is Presumptively Reasonable**

Here, the record indicates that Petitioner has been subjected to more than six months of post-removal-order detention. Dkt. No. 14 at 6 ("Petitioner . . . is subject to a final order of removal as of December 22, 2025[.]"). Indeed, "there is no dispute that more than six months have passed since [Petitioner's] removal order became final, and therefore the presumptively reasonable removal period has lapsed." Dkt. No. 17 at 3 (citing Dkt. No. 14 at 11); *see Zadvysas*,

533 U.S. at 701. Therefore, the Court finds that Petitioner has been detained past the presumptively reasonable period.

### b.   Petitioner Has Met His Burden Under *Zadvydas*

Petitioner also satisfies his burden under *Zadvydas* to show that no significant likelihood of removal in the reasonably foreseeable future exists here. Petitioner asserts, and Respondents agree, that the IJ granted withholding of removal to Afghanistan. Dkt. No. 10-1 at 2; Dkt. No. 10 at 8; Dkt. No. 14 at 6. Petitioner does not have citizenship or demonstrated ties to another country, and there is no evidence that any other country is willing to accept Petitioner's third-country removal under 8 U.S.C. § 1231(b)(2)(E). As the Ninth Circuit has recognized, a grant of withholding of removal under the Convention Against Torture to a noncitizen "is a powerful indication of the improbability of his foreseeable removal, by any objective measure." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006); *see also Nguyen v. Field Office Director*, No. C26-394, 2026 WL 538487, at *3 (W.D. Wash. Feb. 26, 2026) (finding petitioner satisfied his burden of demonstrating that removal was not reasonably foreseeable because he had been in detention seven months, had been granted withholding of removal prohibiting removal to his home country, and there had been no indication from third-country consulates that they would accept petitioner); *Shadalo v. Mattos*, No. C25-2076, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025) (finding petitioner satisfied his burden to demonstrate that removal was not reasonably foreseeable, in part, because petitioner could not be removed to his birth country pursuant to the CAT); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1184 (E.D. Cal. 2025) (finding petitioner satisfied his burden to demonstrate that removal was not reasonably foreseeable where petitioner was granted withholding of removal and ICE had not identified a third country willing to accept petitioner after seven months of detention); *Gomez v. Mattos*, 817 F. Supp. 3d 1002, 1011 (D. Nev. 2025) (finding petitioner satisfied his burden with evidence that he was granted

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

withholding of removal to his home country and DHS had not identified a third country to which it could remove him). Therefore, the Court finds that Petitioner satisfied his burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### c.    Respondents Have Not Met Their Burden Under *Zadvydas*

Respondents have not rebutted Petitioner's showing that removal is not significantly likely. Respondents make clear that it is their expectation that Petitioner should be contacting consulates of countries to which he is willing to be removed. Dkt. No. 14 at 6 ("There is no evidence that Petitioner has taken steps to contact foreign consulates or request acceptance, and he has refused to participate in his own removal process."). Respondents assert that Petitioner "told ICE that he did not wish to be removed to a third country." *Id.* at 10. Respondents claim that Petitioner's "ongoing refusal to cooperate in identifying third countries for removal and failure to assist with travel document requests is at least part of the reason he remains in detention." *Id.* at 11. These accusations appear to rest on the incredible premise that it is somehow Petitioner's responsibility to not only "participate in," but *actively coordinate* his own deportation. But Respondents fail to provide sufficient facts or law to support this burden shifting and finger-pointing.

The Court is perplexed and confounded by Respondents' insistence that the burden of facilitating removal should be shifted to someone whom they themselves hold in a prison-like detention setting. *See Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) (finding conditions at the NWIPC are akin that of a prison); *Reyes v. Wolf*, No. C20-377, 2020 WL 6820903, at *6–7 (W.D. Wash. Aug. 7, 2020) (same). Respondents provide no explanation of how Petitioner might successfully convince a country to which he has no ties to accept him, or why he should be expected to. Respondents allege only that there is no

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 9

evidence that Petitioner has taken steps to contact foreign consulates or request acceptance. Dkt. No. 14 at 6. The Court agrees with the recent observation of another court in this District: "This is not obstruction, it is blaming an asylum seeker for not having ties to third, fourth, or fifth countries." *Yukseloglu v. Bondi*, No. C26-467, 2026 WL 617367, at *3 (W. D. Wash. Mar. 5, 2026).

The Court also finds unfounded Respondents' assertion that Petitioner's actions represent a "refusal to cooperate," which Respondents liked to that of the detainee in *Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir. 2003). *See* Dkt. No. 10 at 15. In *Pelich*, the Ninth Circuit affirmed the district court's ruling that Mr. Pelich's immigration detention was not indefinite in violation of due process because he refused to cooperate with Immigration and Naturalization Service's ("INS") attempts to remove him. *Pelich*, 329 F.3d at 1057–58. There, however, the court's holding was based on findings that Mr. Pelich initially refused to complete a passport application to his own country of citizenship (*id*. at 1058); that he then filled out the application but lied about his name, his nationality, and where he was born (*id*.); and that he provided the INS with conflicting information regarding his parents' names and his parents' birthplaces and residences (*id*. at 1059). The record showed that these actions had "caused" his prolonged detention by frustrating a removal that might otherwise have been carried out. *Id.* at 1061. Here, there is no such active obstruction by Plaintiff, nor any evidence that Respondents have taken any steps toward arranging his removal. Indeed, Petitioner states that he actually contacted the consulates of at least six different countries (Australia, Canada, New Zealand, United Kingdom, France, and Sweden) and called the Australian consulate at least three times. Dkt. No. 10 at 8–9; Dkt. No. 2-1. Petitioner *continues* to contact the consulates of other countries, but no country has agreed to accept him. Dkt. No. 10 at 9. The Court finds the *Pelich* facts to be nothing like the facts in the instant case. *See, e.g.*, *Kara v. Bondi*, No. C26-105, 2026 WL 322772, at *4 (W.D.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 10

Wash. Feb. 6, 2026) ("Here, Respondents do not point to sufficient evidence that Petitioner was noncooperative. The government's sworn declaration says that Petitioner 'refused to provide any third countries he would be willing to go to,' which does not amount to an affirmative misrepresentation or refusal to apply for travel documents as in *Pelich*[.]" (citation modified)).

Finally, Respondents' account of any efforts at removal does not rebut Petitioner's arguments. Respondents do not assert that they have submitted a single travel document request to any country on behalf of Petitioner. *See* Dkt. No. 14. Respondents do not allege that they have identified a country willing to accept Petitioner, have any potential countries under consideration, or even have plans to make requests any time soon. Respondents simply assert that "ICE intends to continue pursuing third country removal and will work with the consulate of the country that accepts Petitioner to obtain a proper travel document." *Id.* at 10 (citing Dkt. No. 15 ¶ 13). This intention does not make removal reasonably foreseeable. Even concerted efforts, if fruitless, do not meet the standard; courts routinely reject government arguments that "equate 'We're trying' with 'We will.'" *Mosquera Camacho v. Hermosillo*, No. C25-2457, 2026 WL 628297, at *4 (W.D. Wash. Mar. 6, 2026) (collecting cases); *see also, e.g.*, *Tran v. Noem*, No. C25-1523, 2025 WL 3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that the government was "actively working on obtaining a travel document for Petitioner to Vietnam" was insufficient to show removal was reasonably foreseeable); *Phan v. Beccerra*, No. C25-1757, 2025 WL 1993735, at *5 (E.D. Cal. July 16, 2025) ("Respondents['] intent to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Hambarsonpour v. Bondi*, No. C25-1802, 2025 WL 3251155, at *3 (W.D. Wash. Nov. 21, 2025) (same where government had arranged interview with French consulate but progress was uncertain and government "provided nothing beyond assertions that travel documents and removal will occur 'soon'"). Here, Respondents appear not to even have made

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

any efforts to remove Petitioner, despite the statutory requirement that removal "shall" be executed within 90 days, *see* 8 U.S.C. § 1231(a)(1)(A), and the Court will not reward assurances that ICE "intends to continue" efforts that appear not yet to have begun.

Therefore, the Court finds that Respondents failed to provide evidence to rebut Petitioner's showing that removal is not significantly likely. Because (a) Petitioner's length of detention exceeds what is presumptively reasonable, (b) Petitioner showed good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, and (c) Respondents failed to rebut Petitioner's showing, Petitioner has demonstrated that his continued detention is unlawful under *Zadvydas*. Accordingly, a writ of habeas corpus is warranted and the Court GRANTS Petitioner's request that Respondents immediately release him from custody.

**B.      Requests for Injunctive Relief**

Petitioner also makes several requests for injunctive relief regarding the prospect of his removal to a third country or future re-detention following release. A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court considers Petitioner's requests in turn.

**1.      Requests Related to Third-Country Removal**

Petitioner makes two requests related to the prospect of his removal to a third county— that is, a country other than Afghanistan or the United States. First, he asks that the Court "[o]rder that Respondents may not remove or seek to remove [Petitioner] to a third country

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings." Dkt. No. 10 at 31. Next, Petitioner requests that the Court "[o]rder that Respondents may not remove [Petitioner] to any third country where he is likely to face imprisonment or other punishment upon arrival." *Id.* In response to both requests, Respondents argue that Petitioner's claim regarding fear of removal to a third country is already protected under existing DHS policy. Dkt. No. 14 at 19–20.

The Court will briefly discuss the current DHS policy Respondents rely on, then consider Petitioner's requests for relief.

### a.    Existing DHS Policy

Removal to a third country is permissible *only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to: (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the U.S., or which contains the port from which they disembarked for the U.S. or a contiguous territory; or (d) the noncitizen's country of birth (or the country that now contains their birthplace) or immediate previous residence. 8 U.S.C. § 1231(b)(2)(E). Under such circumstances, the government may remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* § 1231(b)(2)(E)(vii). Even then, the government may not remove any person to a country where they will be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16. Where third-country removal is anticipated, due process requires, *inter alia*, notice of the country to which the noncitizen will be removed that is not be provided "last minute," but instead with sufficient time for the noncitizen to have a meaningful opportunity to apply for fear-based protection from removal. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). Courts in this District have found, and this Court agrees, that such notice must consist of "written notice of the

country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," and that the noncitizen must be affirmatively asked whether they fear persecution or harm upon removal to the third country, with their response memorialized in writing. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *see also Palacios Obregon v. Blanche*, No. C26-484, 2026 WL 1223424, at *8–9 (W.D. Wash. May 5, 2026) (adopting reasoning of *Aden* and citing cases doing the same); *Douangdala v. Bondi*, No. C26-963, 2026 WL 1113383, at *4 (W.D. Wash. Apr. 24, 2026) (adopting reasoning of *Aden*); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199-1200 (W.D. Wash. 2025) (same); *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *6–7 (W.D. Wash. Nov. 17, 2025) (same).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *see also Douangdala*, 2026 WL 1113383, at *4; *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025); *Baltodano*, 815 F. Supp. 3d at 1199; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. Aug. 21, 2025). These district court cases are not binding, but Respondents offer no reason the Court should not follow them. As it previously has, *see, e.g.*, *Kamleshan v. Blanche*, No. C26-908, 2026 WL 1194600, at *8 (W.D. Wash. May 1, 2026); *Saadhom v. Bondi*, No. C26-425, 2026 WL 698786, at *6 (W.D. Wash. Mar. 12, 2026); *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1114 (W.D. Wash. 2025), the Court finds the reasoning in *Aden* and the other cited cases persuasive and concludes that before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14

Respondents assert that "DHS policy already provides the process Petitioner requests." Dkt. No. 14 at 12. Here, Respondents refer to a March 30, 2025, DHS memo titled "Guidance Regarding Third Country Removals," a June 23, 2025, ICE memo titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*," and a July 9, 2025, DHS Memo. Dkt. No. 14 at 12. Much ink has been spilled discussing how the current DHS policy works, and why, those procedures have repeatedly been held to fall far short of what courts in this District and this Circuit have held is required by due process. *See, e.g.*, *Rea-Hernandez v. Bondi*, 824 F. Supp. 3d 1124, 1137 (W.D. Wash. 2026) ("Alarmingly, this policy provides that if the United States has received diplomatic assurances from the country of removal that noncitizens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the noncitizen may be removed *without the need for further procedures*." (citation modified)); *Francisco Lorenzo v. Bondi*, No. C25-2660, 2026 WL 237501, at *9–10 (W.D. Wash. Jan. 29, 2026) (finding that Respondents' third-country removal policy, as described in the July 9, 2025, memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. C25-1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)). The Court will not spend more time repeating the reasons for these findings here, except to reiterate that the widely circulated memos do not inspire confidence that Respondents can be relied upon to afford Petitioner with a statutorily and constitutionally sufficient process absent an order from this Court.

### b.    Petitioner's Request for Procedural Protections

With regard to his request for additional procedural protections before any removal to a third country, Petitioner meets the standard for injunctive relief.

Petitioner has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: the violation of his due process rights engendered by his unconstitutionally prolonged detention. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Petitioner is likely to suffer that injury again if Respondents attempt to remove him to a third country without the protection required by the Due Process Clause, and he is likely to suffer even graver injury if a constitutionally deficient removal is effectuated. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the Government [might] argue[], as it has previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. Considering such serious harm to Petitioner, the balance of equities tips steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents of providing notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has demonstrated that injunctive relief is warranted, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove [Petitioner] to a third country without notice and meaningful opportunity to respond in

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 16

compliance with the statute and due process in reopened removal proceedings." Dkt. No. 10 at 31.

### c.    Punitive Third-Country Banishment

In addition to the procedural concerns discussed above, Petitioner asks for an order enjoining his removal to "any third country where he is likely to face imprisonment or other punishment upon arrival," alleging that Respondents' current policy places him at risk of removal that would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing* in 1896, 163 U.S. at 233–34, that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 10 at 28–29.

In support of this argument, Petitioner asserts that Respondents have "attempted—and completed—an 'end-run' around the protections of the Convention Against Torture by deporting a group of migrants to Ghana, which sent them on to their countries of citizenship despite fears of persecution." *Id.* at 20. Petitioner alleges that the Trump administration has hand-picked countries known for human rights abuses and instability for its deportations, in an attempt to spread fear and deter immigration, and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 20–21. The Court notes that Petitioner does not substantiate these allegations with admissible evidence, relying instead on news reports. But it also notes that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, No. C25-2024, 2025 WL 3534168, at *9 (W.D. Wash. Dec. 10, 2025) (citing *Nguyen v. Scott*, 796 F. Supp. 3d at 734 (collecting cases)).

However, in this case, faced with the pleadings before it, the Court does not have sufficient basis to find that Respondents' third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. For example, one of the declarations Petitioner provides is from *Nguyen v. Scott*, 796 F. Supp. 3d 703, in which an immigration attorney from North Carolina discussed the deportation of Vietnamese detainees, based on his experience representing Vietnamese citizens in immigration court. Dkt. No. 10-4 (Nguyen Decl.). This example was uniquely probative as to the particular petitioner in *Nguyen* because he was part of a particular cohort of "pre-1995" Vietnamese immigrants, and the declaration discussed an uptick in similarly situated noncitizens being deported to South Sudan and Eswatini. *See Nguyen*, 796 F. Supp. 3d at 716–17. Here, Petitioner is from Afghanistan, and he provides no declaration or other facts regarding a third-country removal practice specific to him or to others like him. The holdings in *Nguyen* and other cases in this District in which courts *have* enjoined third-country removal as punitive, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*, 2025 WL 3204369, at *8).

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

### 2. Requests Related to Re-Detention

Petitioner seeks a permanent injunction preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances." Dkt. No. 10 at 30. He also requests the Court order Respondents to meet a specific sub-set of conditions prior to any re-detention, namely, that

Respondents (1) obtain a valid travel document to a third country for Petitioner; (2) provide the valid travel document to Petitioner and his counsel; (3) offer Petitioner the opportunity to challenge the third-country removal; and (4) may not subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks. *Id.* In response, Respondents argue that any request regarding re-detention is speculative and does not provide a basis for habeas relief. Dkt. No. 14 at 13–14.

### a.    Request for Pre-Deprivation Hearing

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13.

### (1)    Whether a Pre-Deprivation Hearing Is Warranted

Petitioner requests that before he is re-detained, he be given a hearing before a neutral decision maker at which the government bears the burden to demonstrate that his detention is justified. Here, Petitioner meets the standard for injunctive relief.

A permanent injunction is appropriate where the party can demonstrate it is likely to suffer irreparable injury that cannot be redressed by an award of damages. *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018). Petitioner is subject to indefinite unconstitutional detention right now; that itself is an indicator that Respondents have already caused irreparable injury to Petitioner and are likely to re-detain him without due process of law. Furthermore, Petitioner chronicles numerous *other* cases in which courts in this District have ordered the release of similarly situated petitioners because they were re-detained in violation of

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 19

due process. *See* Dkt. No. 10 at 13. Courts in this District, as well as others, have also released petitioners subject to final orders of removal because Respondents failed to provide adequate notice of the revocation and an opportunity to be heard. *See, e.g.*, *Le v. Bondi*, 824 F. Supp. 3d 1112, 1121–22 (W.D. Wash. 2026) (finding that Government did not comply with 8 C.F.R. § 241.13 when they revoked Order of Supervision and re-detained petitioner subject to final removal order and ordering that Government could not re-detain petitioner without compliance with the applicable statute and regulation); *see also id.* at 1121 n.2 (collecting cases where Respondents failed to show proof of following federal regulations when re-detaining petitioner subject to final removal order); *Tran v. Bondi*, No. C25-2335, 2025 WL 3725677, at *5 (W.D. Wash. Dec. 24, 2025); *Khim v. Bondi*, No. C25-2383, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025); *Rodriguez v. Bondi*, No. C25-2167, 2025 WL 3466925, at *2–3 (W.D. Wash. Dec. 3, 2025). These cases convince the Court that, absent a court order, this type of deprivation can and may likely happen to Petitioner. Therefore, Petitioner satisfies the first *eBay* prong.

Second, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres*, 695 F.3d at 1002). A violation of due process means Petitioner meets the second *eBay* prong as well. *See id*. at 999.

Prongs three and four of the *eBay* factors merge when the Government is the party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner is correct that Respondents suffer no hardship by being prevented from following unlawful re-detention practices. See Dkt. No. 10 at 26. Ordering Respondents not to re-detain noncitizens without due process does not create a disservice to the greater public; rather, it reinforces constitutional rights. *See Elsasser*, 32 F.4th at 731 ("It is always in the public interest to prevent the violation of a party's constitutional rights." (citation modified)); *Jorge M.F. v. Wilkinson*,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 20

No. C21-1434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." (citation modified)). Accordingly, the balance of hardships and public interest weigh in Petitioner's favor.

### (2)    The standard for re-detention

Finally, the Court addresses the applicable standard the government must meet before it may re-detain Petitioner. Petitioner urges that Respondents must prove by clear and convincing evidence that he is a danger or a flight risk. Dkt. No. 10 at 30. But because Petitioner's detention has already become unconstitutionally prolonged in violation of *Zadvydas*, that justification will no longer suffice to justify detention. "[B]y definition . . . preventing flight risk . . . is [a] weak or nonexistent [justification for detention] where removal seems a remote possibility at best." *Zadvydas*, 533 U.S. at 690. Because the Court's determination that Petitioner's detention has become indefinite means removal is a "remote possibility at best," *id.*, Respondent may only be re-detained upon a showing that circumstances have changed such that the government can make the showing it has so far failed to make: that Petitioner's removal is likely and foreseeable.

Based on Respondent's illegal detention in this case and their pattern of conduct in similar cases, this Court finds it appropriate to GRANT Petitioner's request for injunctive relief with this modification: Respondents may only re-detain Petitioner if, on account of changed circumstances, Respondents can demonstrate to a neutral decision maker that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

### b.    Request for Other Procedural Requirements

Petitioner requests the Court order Respondents to meet a specific sub-set of conditions prior to any re-detention, namely, that Respondents: (1) obtain a valid travel document to a third country for Petitioner; (2) provide the document to Petitioner and his counsel; (3) offer Petitioner

the opportunity to challenge the third-country removal; and (4) may not subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks. The requested guidelines are not reflected in 8 C.F.R. 241.13, and Petitioner cites no other authority that supports this request. As for the opportunity to challenge third-country removal, this is addressed in the procedural protections ordered elsewhere. *See supra* Section III.B.1.b. Finally, Petitioner does not allege that "Respondents will place GPS monitoring devices on h[im] without justification." *Cetino Garcia v. Noem*, No. C26-556, 2026 WL 733798, at *5 (W.D. Wash. Mar. 16, 2026). Without more argument or evidence supporting them, Petitioner's "requests constitute nothing more than a 'mere possibility' of harm that do not entitle h[im] to relief." *Id.* (quoting *Cummings v. Connell*, 316 F.3d 886, 887 (9th Cir. 2023)).

Therefore, the Court DENIES these requests.

### IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 10) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)   Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    a.   SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

    b.   SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release;

c.    ARE PROHIBITED from re-detaining Petitioner without first providing him with notice and an audio-recorded hearing at which the government demonstrates, by a preponderance of the evidence, that circumstances have changed such that Petitioner's removal to a country other than Afghanistan has become reasonably likely in the foreseeable future; and

d.    ARE PROHIBITED from removing or seeking to remove Petitioner to any third country without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 20th day of July, 2026.

_____
Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 23